UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX BROWN and TRENT CLAYTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION INC.,<br><br>Defendant. | Civil Action No.   2:21-cv-1119 |

## CLASS ACTION COMPLAINT

Alex Brown and Trent Clayton, on behalf of themselves and other student athletes, bring this action against Pennsylvania Interscholastic Athletic Association Inc. seeking an equal opportunity for wheelchair and other para-ambulatory athletes to qualify for and, upon qualification, compete in PIAA's Track and Field Championships, beginning in 2022.

### NATURE AND SUMMARY OF THE ACTION

1. PIAA regulates interscholastic athletic competition in Pennsylvania.

2. Although PIAA requires member schools to accommodate some Para athletes[1] during the regular season, no process exists for Para athletes to qualify for and, upon qualification, compete in PIAA's end-of-season Track and Field Championships.

3. That's because, according to PIAA, "[t]rack and field events administered by PIAA are intended for participation by **able-bodied** athletes[,]" only.[2]

---

[1] Plaintiffs use the term "Para athlete" to describe individuals who have a permanent physical disability and who compete, will compete, or have been deterred from competing in high school track and field in Pennsylvania.

[2] *2020-21 PIAA Policies and Procedures*, PIAA, pp. 125-27 (Ex. A) (emphasis added).

1

4.      PIAA's Equal Opportunity Statement does not even mention "disability."[3]

5.      This action seeks an injunction ordering PIAA to update its able-only policy to ensure wheelchair and other para-ambulatory athletes have the same opportunity as their classmates, beginning in the 2022 season, to qualify for and, upon qualification, compete in PIAA's high school track and field championships.

6.      Although PIAA claims it "simply is not equipped to offer the broad range of interscholastic competitive opportunities which might be desired or preferred,"[4] at least 27 other state high school associations maintain a wheelchair division for track and field. Of these states, at least 12 also maintain a separate division for para-ambulatory athletes who do not use a wheelchair to compete.[5]

7.      By failing to maintain a process for these student athletes to qualify for and compete at PIAA's track and field championships, PIAA has denied Alex, Trent, and other students "the values of competition/participation and performance," which PIAA states should be made available to students "at every conceivable opportunity."[6]

---

[3] *2020-21 PIAA Constitution and By-Laws: Equal Opportunity Statement*, PIAA, p. 1 (Ex. B) ("The Pennsylvania Interscholastic Athletic Association, Inc. (PIAA) believes that all boys and girls should have equal opportunity to participate in all levels of interscholastic athletics regardless of race, color, sex, creed, religion or ethnic background.").

[4] Ex. A, p. 125.

[5] *State High School Associations with Adaptive Sports Programming*, https://www.atfusa.org/HIGH_SCHOOL/Integrated%20State%20High%20School%20Athletic%20Programs_1.29.19.pdf (last accessed Aug. 23, 2021).

[6] According to PIAA, "[i]nterscholastic athletics remain the best 'deal,' educationally and financially in America today. All administrators, teachers, coaches, and parents should know, understand and sell, **at every conceivable opportunity**, the values of competition/participation and performance, as those values are the same for students in grades 7 through 12, whether they finish 1st or 101st." *Our Philosophy*, PIAA (emphasis added), http://www.piaa.org/about/philosophy.aspx (last accessed Aug. 23, 2021).

2

8. For the same reason, PIAA has also violated Titles II and III of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12132, 12182 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

10. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b) and (c) because Alex resides and attends high school in this District; PIAA sets standards and operates track and field meets in this District; and PIAA has sufficient minimum contacts with this District.

## PARTIES

### Alex Brown

11. Alex is a 15-year-old student at North Catholic High School in Cranberry Township, Pennsylvania, where he will be a sophomore this fall.

12. Alex expects to graduate from North Catholic High School in 2024.

13. Like many students across Pennsylvania, Alex enjoys track and field.

14. Alex uses a wheelchair to participate in extracurricular athletics, including track and field.

15. That's because Alex suffered a spinal cord injury when he was four years old and is substantially limited in one or more major life activities, including, but not limited to, walking, bending, and standing.

16. As a result, Alex is a qualified individual with a disability under the ADA.

**Trent Clayton**

17.    Trent is an 18-year-old student in West Chester, Pennsylvania.

18.    Trent expects to graduate from high school in 2022.

19.    Like many students across Pennsylvania, Trent enjoys track and field and has been a member of the at West Chester East High School track and field team since 2018.

20.    Trent has cerebral cavernoma, a vascular abnormality of the central nervous system that substantially limits Trent in one or more major life activities, including, but not limited to, walking, lifting, and bending.

21.    As a result, Trent is a qualified individual with a disability under the ADA.

**Pennsylvania Interscholastic Athletic Association Inc.**

22.    PIAA is a non-profit corporation with its principal place of business in Mechanicsburg, Pennsylvania.

23.    PIAA is the only statewide sports association in Pennsylvania and the only organization that maintains state high school championships in Pennsylvania.

**FACTS**

24.    Alex began competing in track and field when he was ten years old.[7]

25.    As a freshman in 2021, Alex competed in the 100-meter dash and shot put for the North Catholic Trojans.[8]

---

[7] Deborah Deasy, *Charity founded by Cranberry couple helps children with spinal cord problems 'Rise Again'*, Trib Total Media (Jan. 18, 2016), https://archive.triblive.com/news/charity-founded-by-cranberry-couple-helps-children-with-spinal-cord-problems-rise-again/ (last accessed Aug. 23, 2021).

[8] John Enrietto, *Ultimate Teammate: North's Brown scoring points from wheelchair*, Cranberry Eagle (Apr. 21, 2021), http://www.cranberryeagle.com/article/20210421/CRAN0102/704219995 (last accessed Aug. 23, 2021).

4

26. Alex earned a varsity letter in track and field for North Catholic by competing at individual meets during the 2021 regular season and at the WPIAL Track and Field Team Championships, where he completed the 100-meter dash in 23.57 seconds and recorded a best throw of 11 feet, 1 inch in the shot put.

27. WPIAL stands for Western Pennsylvania Interscholastic Athletic League.[9]

28. WPIAL is one of twelve districts governed by PIAA's Constitution and By-Laws.

29. WPIAL consists of schools in ten counties, including Allegheny, Armstrong, Beaver, Butler, Fayette, Greene, Indiana, Lawrence, Washington, and Westmoreland.

30. Since 2018, Trent has competed in the discus and shot put for the West Chester East Vikings.

31. Trent's personal record in the discus is 83 feet, 4 inches. His personal record in shot put is 22 feet, 8 inches.

32. West Chester East High School is part of PIAA District One.[10]

33. Like WPIAL, District One is one of twelve districts governed by PIAA's Constitution and By-Laws.

34. District One consists of schools in four counties, including Bucks, Montgomery, Chester, and Delaware.

35. Each year, WPIAL, District One, and the remaining PIAA districts host end-of-season track meets to determine which student athletes from their respective member schools advance to the PIAA Track and Field Championships.

---

[9] *See* WPIAL, https://www.wpial.org/ (last accessed Aug. 23, 2021).
[10] *See* District One, https://www.piaad1.org/ (last accessed Aug. 23, 2021).

36. Student athletes qualify for the PIAA Track and Field Championships by placing eighth or better in the finals of their district championship meet, provided their time, height, or distance at the district championship meet equals or is better than certain qualifying standards that PIAA sets.[11]

37. PIAA adjusts the qualifying standards by gender and school size such that every student competing in track and field can share in the common goal of qualifying for the PIAA Track and Field Championships—except for Para athletes.

38. PIAA does not allow Para athletes to participate in the annual PIAA Track and Field Championships and does not maintain qualifying standards for these athletes.

39. By failing to maintain a procedure through which Para athletes can qualify for and, upon qualification, compete in the PIAA Track and Field Championships, PIAA denies Alex, Trent, and other Para athletes the opportunity to:

    a. share in their teammates' goal of qualifying for "states";

    b. participate in the PIAA Track and Field Championships;

    c. earn points for their school, if it qualifies for the PIAA Track and Field Championships as a team;

    d. meet and compete against other Para athletes across Pennsylvania—athletes they cannot compete against during the regular season because they are geographically dispersed across PIAA's twelve districts;

    e. represent their schools and communities on a statewide level;

---

[11] *2021 PIAA Track & Field Championships*, PIAA, https://www.piaa.org/assets/web/documents/2021_SQS_Qualifiers.pdf (last accessed Aug. 23, 2021).

    f.  showcase their athletic ability to college scouts and programs, like Penn State Ability Athletics Track and Field;[12]

    g.  earn athletic scholarships; and

    h.  gain the lifelong memories and other long-term benefits of participating in interscholastic sports.

  40.  As a result of being denied these opportunities, Alex and Trent cannot help feeling deterred from concentrating in and committing to track and field events, like the 100-meters, shot put, and discuss.

  41.  Instead, Alex and Trent are more likely to focus on other sports and activities, like sled hockey, tennis, or video games, that are unaffiliated with PIAA, their classmates, friends, coaches, mentors, and schools.

  42.  If PIAA maintained a procedure through which Alex and Trent could qualify for and, upon qualification, compete in the PIAA Track and Field Championships—like it does for the "able-bodied" athletes in Pennsylvania—Alex and Trent would not be so deterred, and would train even harder to earn the right to compete alongside their teammates at future PIAA Track and Field Championships.

  43.  Still, despite the unequal opportunities available to Alex and Trent under PIAA's current able-only policy, and the deterrent effect this unequal treatment has on their commitment to interscholastic track and field, generally, Alex and Trent intend to participate in track and field for their respective high school teams in 2022 because they enjoy their teammates, coaches, and being part of these high school sports communities.

---

[12] *Penn State Ability Athletics Track and Field*, Go PSU Sports, https://gopsusports.com/sports/2018/8/8/ability-track-html.aspx (last accessed Aug. 23, 2021).

44.     Unlike Pennsylvania, many other states allow Para athletes to compete in their high school state championship meets.

45.     For example, if Alex lived 30 miles east and attended high school in East Liverpool, Ohio, then he could have qualified for and competed in Ohio's annual track and field tournament, in which wheelchair athletes have competed since 2013.



46.     Indeed, Alex's time of 23.57 seconds in the 100-meter dash at the WPIAL meet would have won him 10th place at the 2021 Ohio D1 State Track and Field Championships.[13] His shot put of 11 feet 1 inch would have earned him 7th place.[14]

47.     If Trent lived in California, he could have participated in the Ambulatory Para athlete divisions in shot put and discus at the 2019 State Championships.[15]

48.     Unlike students in Ohio, California, and at least a dozen other states across the country,[16] Alex and Trent will never have the chance to qualify for and, upon qualification,

---

[13] *Boys 100 Meter Dash Seated Wheelchair – Preliminaries*, AthleticLive, https://results.timingfirst.com/meets/10110/events/336394/results (last accessed Aug. 23, 2021).
[14] *Boys Shot Put Seated Wheelchair*, AthleticLive, https://results.timingfirst.com/meets/10110/events/336331/results (last accessed Aug. 23, 2021).
[15] *2019 CIF State Championships – Results*, http://www.rtspt.com/events/cif/2019/compiled.pdf (last accessed Aug. 23, 2021).
[16] *State High School Associations with Adaptive Sports Programming*, https://www.atfusa.org/HIGH_SCHOOL/Integrated%20State%20High%20School%20Athletic%20Programs_1.29.19.pdf (last accessed Aug. 23, 2021).

8

compete alongside their teammates at the PIAA Track and Field Championships unless PIAA modifies its current able-only rules, policies, and procedures before the 2022 season.

## CLASS ALLEGATIONS

49. Alex brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following statewide class:

> Wheelchair Athlete Class: "All individuals with a permanent physical disability, who use a wheelchair to compete in track and field, and who have been, or in the future will be, denied a full and equal opportunity to qualify for and, upon qualification, compete in the PIAA Track and Field Championships because PIAA does not offer wheelchair divisions at the PIAA Track and Field Championships."

50. Trent brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following statewide class:

> Ambulatory Para Athlete Class: "All individuals with a permanent physical disability who have been, or in the future will be, denied a full and equal opportunity to qualify for and, upon qualification, compete in the PIAA Track and Field Championships because PIAA does not offer para-ambulatory divisions at the PIAA Track and Field Championships."

51. <u>Numerosity</u>: The classes described above are so numerous that joinder of all individual members in one action would be impracticable because, without limitation, the classes consist of numerous individuals who are geographically diverse and are unlikely to bring individual suits given their status as school students and/or minors. Disposition of the class members' individual claims through this class action will benefit both the parties and Court, and will facilitate judicial economy.

52. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the classes because they arise from the same course of conduct engaged in by PIAA, are based on the same alleged violations of the same statutes and regulations, and seek the same relief.

53. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the classes, including but not limited to: (a) whether the ADA or Section 504 requires PIAA to provide Para athletes the opportunity to qualify for and, upon qualification, compete in the PIAA Track and Field Championships; (b) if either the ADA or Section 504 requires PIAA to provide Para athletes the opportunity to qualify for the PIAA Track and Field Championships, do these statutes also require PIAA to allow Para athletes to score points for their teams at the PIAA Track and Field Championships; and (c) whether either accommodation would fundamentally alter the PIAA Track and Field Championships such that PIAA may continue excluding Para students from the PIAA Track and Field Championships.

54. <u>Adequacy of Representation</u>: Plaintiffs are adequate representatives of the classes they seek to represent because their interests do not conflict with the interests of the members of those classes. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the classes, and they have no interests antagonistic to the members of the classes. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of ADA litigation.

55. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because PIAA has acted or refused to act on grounds generally applicable to the classes, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the classes as a whole.

### FIRST CLAIM FOR RELIEF
### Title II of the ADA, 42 U.S.C. § 12132, *et seq.*

56. The assertions contained in the previous paragraphs are incorporated by reference.

57.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

58.     Alex and Trent are each a "qualified individual with a disability" within the meaning of Title II because they are limited in the major life activities of walking, bending, lifting, and/or standing, and because they meet the essential eligibility requirements for participation in the programs and activities that PIAA provides. 42 U.S.C. § 12131(2).

59.     PIAA is a "public entity" within the meaning of Title II because PIAA's membership is comprised mostly of public schools and because it receives state and federal funding indirectly through PIAA member schools.[17] 42 U.S.C. § 12131(1).

60.     By failing to maintain a process through which Para athletes can qualify for and, upon qualification, compete in the PIAA Track and Field Championships, PIAA has excluded Alex and Trent from participating in Pennsylvania's only high school state track and field championship, denied Alex and Trent the benefits of that opportunity, and otherwise subjected Alex and Trent to a policy that expressly disclaims any responsibility for Para athletes (*see, e.g.*, PIAA's Policies limiting participation to "able-bodied athletes" (Ex. A) and Equal Opportunity Statement omitting student athletes with disabilities (Ex. B)).

61.     In other words, PIAA has violated Title II of the ADA.

---

[17] "Junior high/middle schools pay annual dues of $250; senior high schools pay annual dues ranging from a low of $475 to a high of $625, based on school size." *A Principals' Organization, Principle-Based*, PIAA, http://www.piaa.org/about/story.aspx (last accessed Aug. 23, 2021).

62.     PIAA's ongoing and continuing violations of Title II have caused, and in the absence of an injunction will continue to cause, harm to Alex, Trent, and the classes by barring this group of student athletes from future PIAA Track and Field Championships.

## SECOND CLAIM FOR RELIEF
### Title III of the ADA, 42 U.S.C. § 12181, *et seq.*

63.     The assertions contained in the previous paragraphs are incorporated by reference.

64.     Title III of the ADA generally provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

65.     More specifically, Title III makes it illegal for public accommodations to deny participation in an activity, or to afford an unequal degree of participation in an activity, to an individual or class on the basis of a disability. 42 U.S.C. § 12182(b)(1)(A).

66.     PIAA is a "place of public accommodation" under Title III of the ADA because it owns, leases, and/or operates places of public accommodation; provides benefits and services for the public at and for places of public accommodation; provides and enforces rules, regulations, and standards that are in force at events conducted at or by places of public accommodation; and directs employees and independent contractors to administer benefits and services at places of public accommodation on PIAA's behalf.

67.     By failing to maintain a process through which Para athletes can qualify for and, upon qualification, compete in the PIAA Track and Field Championships, PIAA has excluded Alex and Trent from participating in Pennsylvania's only high school state track and field championship, denied Alex and Trent the benefits of that opportunity, and otherwise denied Alex

12

and Trent full and equal enjoyment of PIAA's goods, services, and facilities (*see, e.g.*, PIAA's Policies limiting participation to "able-bodied athletes" (Ex. A) and Equal Opportunity Statement omitting student athletes with disabilities (Ex. B)).

68. In other words, PIAA has violated Title III of the ADA.

69. PIAA's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Alex, Trent, and the classes by barring this group of student athletes from future PIAA Track and Field Championships.

**THIRD CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,** *et seq.*

70. The assertions contained in the previous paragraphs are incorporated by reference.

71. Section 504 provides, in pertinent part: "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a).

72. Alex and Trent are each a "qualified individual with a disability" within the meaning of Section 504 because they are limited in the major life activities of walking, bending, lifting, and/or standing.

73. PIAA is a recipient of Federal financial assistance sufficient to invoke the coverage of Section 504, and has received such Federal financial assistance at all times relevant to the claims asserted in this Complaint.

74. PIAA received $301,400.00 in Federal financial assistance from the Small Business Administration on April 9, 2020.[18]

---

[18] *Loan Summary*, https://www.usaspending.gov/award/ASST_NON_9884407002_7300 (last accessed Aug. 23, 2021).

75. PIAA received another $272,462.70 in Federal financial assistance from the Small Business Administration on April 29, 2021.[19]

76. "[T]he term 'program or activity' means all of the operations of…an entire corporation…if assistance is extended to such corporation[.]" 29 U.S.C. § 794(b)(3)(A)(i).

77. Because PIAA has received Federal financial assistance, all of its operations—including PIAA Track and Field Championships—constitute a "program or activity" within the meaning of the Rehabilitation Act.

78. The Office for Civil Rights Division of the United States Department of Education published a Dear Colleague letter in 2013 providing guidance relating to students with disabilities in extracurricular athletics. This letter provides that "the Department's Section 504 regulations prohibit…providing a qualified student with a disability with…[a] service that is not as effective as that provided to others and does not afford that student with an equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement in the most integrated setting appropriate to the student's needs[.]"[20]

79. By failing to maintain a process through which Para athletes can qualify for and, upon qualification, compete in the PIAA Track and Field Championships, PIAA has excluded Alex and Trent from participating in Pennsylvania's only high school state track and field championship, denied Alex and Trent the opportunity to reach the same level of achievement as

---

[19] *Loan Summary*, https://www.usaspending.gov/award/ASST_NON_4664048907_7300 (last accessed Aug. 23, 2021).

[20] *See* Ex. C, *Dear Colleague Letter: Students with Disabilities in Extracurricular Athletics (January 25, 2013)* from Seth M. Galanter, Acting Assistant Sec'y for Civil Rights, U.S. Dep't of Educ., p. 4 (Jan. 25, 2013), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201301-504.html (last accessed Aug. 23, 2021); *see also* Ex. D, *Dear Colleague Letter: Students with Disabilities in Extracurricular Athletics (January 25, 2021): Background and Fast Facts* (last modified Jan. 10, 2020), https://www2.ed.gov/print/about/offices/list/ocr/docs/dcl-factsheet-201301-504.html (last accessed Aug. 23, 2021).

a result of this exclusion, and otherwise subjected Alex and Trent to discrimination solely on the basis of their disability (*see, e.g.*, PIAA's Policies limiting participation to "able-bodied athletes" (Ex. A) and Equal Opportunity Statement omitting student athletes with disabilities (Ex. B)).

80. In other words, PIAA has violated Section 504 of the Rehabilitation Act.

81. PIAA's ongoing and continuing violations of Section 504 have caused, and in the absence of an injunction will continue to cause, harm to Alex, Trent, and the classes by barring this group of student athletes from future PIAA Track and Field Championships.

**PRAYER FOR RELIEF**

WHEREFORE, Alex Brown and Trent Clayton respectfully request relief as follows:

(A) An order certifying the proposed classes, appointing Plaintiffs as representatives of the proposed classes they seek to represent, and appointing undersigned counsel as counsel for the proposed classes;

(B) A declaration that PIAA's conduct as alleged violates Titles II and III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes;

(C) Issuance of a permanent injunction requiring PIAA to provide Para athletes a process to qualify for and, upon qualification, compete in the PIAA Track and Field Championships in 2022 and beyond;

(D) An award of reasonable attorney's fees and costs, as provided by law;

(E) Such other relief as the Court finds just and proper, including nominal damages; and

(F) An Order retaining jurisdiction over this case until PIAA demonstrates its compliance with the Court's Orders.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial.

| | |
|---|---|
| Dated: August 24, 2021 | */s/ Kevin W. Tucker* |
| | Kevin W. Tucker (He/Him) (PA 312144) |
| | Kevin J. Abramowicz (He/Him) (PA 320659) |
| | Chandler Steiger (She/Her) (PA 328891) |
| | Stephanie Moore (She/Her) (PA 329447) |
| | **EAST END TRIAL GROUP LLC** |
| | 6901 Lynn Way, Suite 215 |
| | Pittsburgh, PA 15208 |
| | Tel. (412) 877-5220 |
| | Fax. (412) 626-7101 |
| | ktucker@eastendtrialgroup.com |
| | kabramowicz@eastendtrialgroup.com |
| | csteiger@eastendtrialgroup.com |
| | smoore@eastendtrialgroup.com |